IN RE RECEIVERSHIP SELWAY STEEL POST & FENCE COMPANY.

RICHARD G. HOSKINS, Administrator, et al., Appellees, v. MARK L. JOHNSON, Receiver, Appellant.

No. 40327.

NOVEMBER 11, 1930.

*Howard L. Bump,* for Mark L. Johnson, Receiver, appellant.

*Parrish, Cohen, Guthrie, Watters & Halloran,* for Republic Iron & Steel Company and General Fireproofing Company, appellants.

*George A. Wilson,* for Richard Hoskins, Administrator, appellee.

*John L. Gillespie,* for P. J. and J. C. Weil, appellees.

DE GRAFF, J.—The matter involved in this action is an echo of an erstwhile corporation christened by its charter the Selway Steel Post & Fence Company. A reference to the opinion in *Lex v. Selway Steel Corp.,* 203 Iowa 792, l. c. 829, Division XIII, will prove quite helpful in an understanding of the relationship between the Selway Company and the claimants herein, P. J. and J. C. Weil. There, as here, the said Weil brothers were, respectively, involved as subscribers for stock in said company at various dates for a total of $51,000, as evidenced partly in cash and partly in notes payable directly to the corporation, or by "myself" notes. Two of the "myself" notes, each for $2,000, are in controversy here. The notes read as follows:

"$2,000   Dated at Churchville, Iowa, this 22nd day of
September, 1919.

"For value received, One year .... after date I promise to pay to the order of .... 'MYSELF' .... Two Thousand .... Dollars, Negotiable and payable at ........................ with interest at the rate of six per cent per annum from date until paid, and with reasonable attorney's fees if not paid promptly.

"The makers and endorsers severally waive presentation for payment, protest and notice of protest for non-payment of this note.

"Due September 21, 1920.                    P. J. Weil."

"$2,000                    Dated at Norwalk, Iowa, this 18th day of
December, 1919.

"For value received, Ten months after date, I promise to

pay to the order of .... MYSELF Two Thousand Dollars Negotiable and payable at Citizens State Bank, Earlham, Iowa, with interest at the rate of six per cent per annum from date until paid, and with reasonable Attorney's Fees if not paid promptly.

"The makers and endorsers severally waive presentation for payment, protest and notice of protest for nonpayment of this note.

"J. C. Weil."

The two notes, with many others signed by the Weils, were the result of their experience with high-pressure stock salesmen, who were functioning 100 per cent during the boom year of 1919.

Early in the year 1920, the Weils learned of the fraud that had been practiced upon them, and by reason of the knowledge they had received, each secured an agreement from the Selway Company, in which agreement the Selway Company recognized the right of the Weils to cancel their stock subscriptions. This agreement, which we will hereafter term the "Cancellation Agreement," was signed April 15, 1920, by the Selway Steel Post & Fence Company, by H. H. Budke, its secretary-treasurer and general manager. We quote the material stipulations in this agreement, known in this record as Exhibit A.

"In consideration of the agreements herein made and contained, first party [Selway Company] does hereby release second party [J. C. Weil] from the various subscription contracts heretofore made and entered into by and between the parties hereto, whereby second party subscribed for certain shares of stock in first-party corporation, and second party does hereby release first party from its acceptance of said various subscriptions to said stock, and the parties by mutual agreement do hereby cancel, set aside and annul all liability under said subscription contracts. First party does hereby cancel and agree to herewith turn over unto second party all the notes or written evidences of indebtedness which second party may have heretofore signed pertaining to the subscriptions for the purchase of stock in first party in so far as said notes are now in the possession of first party, which said notes now in the possession of first party in so far as known as particularly described as follows, to wit: [Here follows description of notes].

"That the first party does hereby agree to hold second party free and harmless from all liability by reason of the execution and delivery of any and all notes made and executed by second party on account of his subscriptions for capital stock in first party, including all notes made and executed, payable to the order of first party or 'myself' and first party further agrees to immediately and with diligence and good faith locate and determine the names and addresses of the holders of such notes as may have been executed, discounted or sold or gotten into the hands of third parties, and to cause said notes to be canceled or paid and surrendered unto second party. * * *''

The cancellation agreement with P. J. Weil was substantially the same as that made with J. C. Weil, the only difference being in the description of the notes. It may be stated that the notes that were in the possession of the Selway Company were turned back to the Weils, and that other notes which the stock salesmen had sold, and which were to be returned to the Weils, were not so returned. The Weils did surrender the certificates of stock issued to them on or about November 19, 1919. The Selway Company did become insolvent, and a receiver was appointed.

Subsequent to the appointment of the receiver, and on December 29, 1920, the court entered an order in the receivership matter, requiring all claimants to file their claims against the receiver on or before March 1, 1921, and prescribed the notice that should be given, and it was given. Pursuant to this order, and on February 25, 1921, the Weils, respectively, filed an application calling the attention of the court to the cancellation agreement, and to the fact that the Selway Company had failed to comply with all of the terms and conditions of said contract, and set out certain cases that had been instituted against the Weils on notes executed by the Weils, respectively, in connection with the subscriptions for stock in the Selway Company. The application also recited that, on January 3, 1921, the Weils had served notice upon the then receiver of the Selway Company, offering the defenses to said action to said receiver, and asked said receiver to come in and defend or assist in the defense of said actions, and asked said receiver to carry out the terms of said cancellation agreement, and to take such action as would result in protecting all of the rights of the claimants under said

cancellation agreement, and that the court take such further or different action as will protect all of the rights of the claimants as are right and equitable. Upon the hearing of these claims, in 1922, the then presiding judge of the district court denied the claims, and from that order the Weils appealed to the Supreme Court of this state; and on December 15, 1925, the lower court was reversed on the Weil claims. See *Lex v. Selway Steel Corp.*, 203 Iowa 792, l. c. 829. Pertinent language is used in that opinion in which the rights of the Weils under the cancellation agreement were expressly recognized, and it was held that the subscriptions for stock by the Weils were rescinded, and that the Weils were entitled to the full benefit of their rescission. This court said (p. 830) :

."Either they [Weils] were not entitled to rescind at all, and should be held liable for the unpaid portions of their subscriptions, or they were entitled to rescind entirely. The corporation while a going concern acquiesced in their demand for a rescission, and obligated itself to make the rescission complete and effective. It was not beyond the power of its officers to do what the courts would have required it to do; and if it was within the scope of their authority to agree to a rescission to the extent of returning what the corporation had received and still had, it was not beyond their power to agree to protect the Weils against the notes that had passed out of their hands. Under a rescission of the contracts of subscription, whether enforced by the court or agreed to by the corporation, it was bound to return what it had received. By selling these notes it had already received the benefit of them. To deny the claim of the Weils is to allow the corporation to retain that benefit, which, under the law and under its own agreement, it was not entitled to, and to deprive them [the Weils] of the benefit of a rescission which was promptly made on discovering the fraud, and to which the corporation when a going concern agreed.''

The court concluded that the trial court erred in denying the claims of the appellants Weils. The Selway Corporation was dissolved by decree of court May 29, 1922, and its franchise was canceled, and the temporary receiver was continued, for the purpose of collecting the assets, reducing them to cash, and distributing same to the creditors and stockholders.

On the 31st day of October, 1927, Richard G. Hoskins, administrator of the estate of Harry Hill, deceased, filed an application in the receivership of the Selway Company, asking the court to direct the receiver to pay to him a 30 per cent dividend, and thereafter pay such other dividends as have been allowed to the other creditors. The claim of the administrator is based on the two Weil promissory notes heretofore set out, and was based on the cancellation agreement between the Selway Company and the Weils, dated April 15, 1920. The Weils joined with the administrator in his application. The trial court allowed the claims thus filed, and directed the receiver to pay the same ratably with other creditors. It is from this order that the defendant-receiver, Mark L. Johnson, and the two defendant creditors have appealed.

At this point it may be inquired, What are the defenses pleaded to the instant plaintiff's application for order as prayed? The first defense is to the effect that the two notes in question, described in the administrator's petition, were not notes executed by the Weils for stock in the Selway Corporation. We discover no merit in this proposition. The record discloses a certain Exhibit 5, which is designated thereon as "Receipt-Selway Steel Post Company," and reads as follows:

"Sept. 22, 1919            Amount $15,000
"Received of P. J. Weil of Churchville, Iowa.
the sum of _____Dollars,
and notes for $2,000 6 Mo. $2,000 9 Mo. $2,000 1 yr. $9,000 18 Mo. of even date, all payable to the order of Selway Steel Post Co. in payment for 150 shares of the Capital Stock of said Company. * * * Copy of subscription on reverse side.
"D. H. Martens, Agent.         Selway Steel Post Company."

The P. J. Weil note in suit, to wit, the one-year $2,000 note, is included in the above receipt, and was in the possession of, and owned by, Harry Hill at the time of his death. It is further shown that this $2,000 note was delivered by Harry Hill during his lifetime to his then attorney, George A. Wilson, of Des Moines. It further appears that the Selway Company had selected certain orange-colored paper, on which its typical form of promissory notes were printed. The notes in question, which were delivered by Mr. Hill to his attorneys Wilson & Shaw, were turned over to John L. Gillespie, attorney of record for J. C.

and P. J. Weil. Prior to this time, the attorney for the Weils had not learned of the whereabouts of this note. We are satisfied from the competent facts of the record, with due consideration to the objections made thereto by the appellant-receiver, that the notes were sufficiently identified, and that they were notes executed by the Weils for stock in the Selway Corporation.

It is next urged as a defense to the claim of the administrator and the Weils that the time allowed for filing claims had passed when the instant application was filed. The Weils did  everything in their power, prior to March 1, 1921, by filing their claim in the receivership proceedings, and therein set out all the ascertainable facts which could be obtained to that date, and in their claim filed February 25, 1921, called the court's attention to their contractual rights existing under their cancellation agreement, and alleged therein that the receiver had been notified in writing that he, as receiver, was requested to carry out the terms of the cancellation agreement, which was held by this court, as heretofore pointed out, to be, in fact and in law, a rescission. After the original case involving the claims of the Weils was reversed, and procedendo had issued, the trial court entered an order directing the receiver to pay the notes which were specifically set out in the original claim against the receiver; and the court, being duly advised that other notes were outstanding which were not covered by the prior order of payment, entered, on September 16, 1927, the following: "This order is without prejudice as to any notes executed by P. J. Weil or J. C. Weil other than the notes herein specifically set out or to any defenses there may be thereto." There was no appeal from this order, and it was never modified. It is a sufficient justification for the position now taken by the appellees.

The next defensive claim urged by the appellants is that the cancellation agreements are contracts of indemnity only. We cannot accept this view. The trial court held that, under the  contracts of cancellation, the owner of the notes (Hill) had certain rights, and could enforce payment of the notes as against the Selway Company or its receiver. The Supreme Court held that the cancellation agreements were rescission contracts, as between the Selway Company and the Weils. The Selway

Company and its receiver were and are bound by the adjudication made by this court as to the Weils, as shown by the decision of this court, filed December 15, 1925 (203 Iowa 792). The cancellation agreement is, in essence, an absolute agreement to find the notes and to cause said notes to be canceled, or "paid and surrendered to the Weils." It was, in legal effect, a contract to pay the outstanding "myself" notes. The Weils joined in the application of the plaintiff administrator, filed October 31, 1927,  in the request that the receiver be ordered to make payment to the owner of these notes. It was so ordered by the trial court, and it is from this particular order, directing the dividends to be paid to the plaintiff-administrator of the Hill estate, that the present receiver of the Selway Company appeals. There was no splitting of causes of action. Equity does not require a person or official to do the impossible. All parties knew that all of the "myself" notes had been discounted by agents of the Selway Company to third parties, but the names of the holders could not, in the first instance, be ascertained. Upon the reversal of the original cause in the receivership matter, it did become possible to find out who owned the "myself" notes, including the two notes in suit. The Weils joined the plaintiff-administrator of the Hill estate, and admitted that all payments on the notes in controversy were legally and equitably in the possession and ownership of the estate of Harry Hill.

Under the instant record, we hold that the two notes did belong to the said estate, and the trial court entered the proper final order on June 24, 1929, when it allowed the claim of P. J. Weil and J. C. Weil in the respective amounts, as recited in said order, and in ordering and directing the instant receiver to pay the dividends directly to Richard G. Hoskins, administrator of the estate of Harry Hill, deceased.

The ruling of the trial court is, therefore,—*Affirmed*.

MORLING, C. J., and STEVENS, ALBERT, and WAGNER, JJ., concur.